# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TOTTEN,          | 1:09-CV-01044 OWW GSA HC |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| J. D. HARTLEY, Warden, | |
|     Respondent. / | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Orange, following his conviction by jury trial on June 29, 1993, of attempted murder with a firearm. See Petition at 2. Petitioner was sentenced to serve an indeterminate term of life plus three years with the possibility of parole. Id.

On August 12, 2008, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. (HT[1] at 1.) Petitioner

---

[1] "HT" refers to the hearing transcript that is attached as Exhibit C to the petition.

1

attended the hearing and was represented by an attorney. (HT at 1-2.) At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. (HT at 72.)

On December 19, 2008, Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court. See Answer, Exhibit 1. On January 29, 2009, the petition was denied in a reasoned decision. See Answer, Exhibit 2. Petitioner then filed a habeas petition in the California Court of Appeals, Fourth Appellate District. See Answer, Exhibit 3. The petition was summarily denied on March 5, 2009. See Answer, Exhibit 5. On April 8, 2009, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit 4. On May 20, 2009, the petition was denied. See Answer, Exhibit 6.

On June 15, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. The petition challenges the 2008 decision of the Board of Parole Hearings denying parole. Petitioner contends the Board of Parole Hearings violated his due process rights in denying him parole based on findings that were arbitrary, unsupported by any evidence and contrary to the record. On September 8, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on October 8, 2009.

## FACTUAL BACKGROUND[2]

Petitioner and his wife had been separated for several months in late 1990. Petitioner's wife nonetheless became pregnant with the couple's third child during an attempted reconciliation.

During the week preceding the commitment offense, the couple engaged in a number of verbal arguments revolving around the custody and care of the couple's children. Petitioner vandalized his wife's vehicle two separate times. Petitioner verbally abused his wife prompting her to call police on a couple of occasions. Petitioner also threatened to kill his wife multiple times.

Petitioner's wife secured a restraining order against Petitioner that reduced his visitation with his children by half. Petitioner became upset and angry about his reduced visitation with the

---

[2] The information is derived from the Orange County Superior Court's order denying habeas petition. See Answer, Exhibit 2.

children.

On October 30, 1990, Petitioner's five-month pregnant wife went to a scheduled medical appointment. As she approached her car, she noticed Petitioner standing behind her holding a long white box containing a doll swing for one of the children, according to Petitioner. She allowed Petitioner to place the box in the back seat and agreed to drive Petitioner back to his nearby worksite.

Upon starting the car, Petitioner's wife saw Petitioner holding a rifle between the seats that had been taken out of the white box. She screamed and pushed the barrel of the rifle in a downward direction. During the struggle, two shots rang out, one of which struck Petitioner in the leg.

Petitioner's wife exited the vehicle but not before Petitioner grabbed her arm and struck her in the head. She ran toward the medical building but was cut off by Petitioner before reaching the entrance. Petitioner's wife heard the gun cock and a shell eject as she attempted to elude Petitioner. The victim then fell to the ground after being shot in the head. Petitioner walked up to his wounded wife and nudged her body with his feet before fleeing. The victim lost hearing in one ear and suffered a broken jaw.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction,

1  28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the
2  threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California</u>
3  <u>Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370
4  F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
5  state prisoner in custody pursuant to a state court judgment, even when the petition is not
6  challenging [her] underlying state court conviction.'").

7        The instant petition is reviewed under the provisions of the Antiterrorism and Effective
8  Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63,
9  70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
10 adjudication of the claim "resulted in a decision that was contrary to, or involved an
11 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
12 of the United States" or "resulted in a decision that was based on an unreasonable determination
13 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
14 § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

15       As a threshold matter, this Court must "first decide what constitutes 'clearly established
16 Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,
17 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
18 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
19 of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other
20 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
21 principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.

22       Finally, this Court must consider whether the state court's decision was "contrary to, or
23 involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at
24 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
25 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
26 Court on a question of law or if the state court decides a case differently than [the] Court has on a
27 set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S.
28 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

4

state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.  Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

5

constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, contrary to Petitioner's assertions, he was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is,

6

by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Unstable social history and previous criminal behavior; 3) Limited self-help programming; and 4) Psychological report. (HT at 61-73.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[3] In particular, the Board found that the offense was carried out in a dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B). The superior court determined some evidence supported this finding in that Petitioner obtained a rifle beforehand, contacted the pregnant victim at her doctor's office under the pretense of giving his child a gift, and then proceeded to shoot her in the head in an attempt to kill her as she attempted to flee to safety. Clearly, the superior court's determination regarding the Board's finding on this factor was reasonable. In addition, the Board determined the victim was abused and defiled

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

during the offense. 15 Cal. Code Regs. § 2402(c)(1)(C). The superior court made no determination with respect to this finding, but the evidence does not support the finding. It is not reasonable to portray Petitioner's act of nudging the victim as an act of abuse, defilement, or mutilation. In any case, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel was reasonable given the dispassionate and calculated nature of the offense.

Next, the Board found Petitioner's unstable social history and record of criminality demonstrated a risk of danger to the public. 15 Cal. Code Regs. §§ 2402(c)(2), (3). As noted by the superior court, Petitioner had a history of abusive and criminal behavior directed toward the victim in this case, including acts of harassment, vandalism, and death threats. Petitioner also had a history of using methamphetamine during the three years prior to the offense. Given the record, the superior court's determination was reasonable.

The Board also determined that Petitioner had engaged in limited self-help programming. Although not a specific circumstance indicating unsuitability, this fact can be considered as relevant evidence in determining suitability. 15 Cal. Code Regs. § 2402(b). The Board noted that Petitioner had admitted to a substance abuse problem, and Petitioner had regularly participated in Alcoholics Anonymous and Narcotics Anonymous programs. However, Petitioner also had an anger management issue which was a cause of the offense. In fact, Petitioner demonstrated his anger problem at the hearing and also before a reviewing psychologist. The Board determined that Petitioner had not completed his on-going anger management studies and he obviously remained a danger to the public given his angry and frustrated manner in a controlled setting such as a parole hearing. Therefore, the superior court's determination that some evidence supported these factors of unsuitability was not unreasonable.

Finally, the Board considered the psychological report pursuant to 15 Cal. Code Regs. § 2402(c)(5). The report was deemed not supportive of release because it concluded Petitioner still had limited insight into the causative factors of the offense. As noted by the superior court, this factor is borne out by Petitioner's own statements. Contrary to the record, Petitioner continues to assert he accidentally pulled the trigger with no intention of actually hurting the

victim. He also identifies his lack of sleep and use of methamphetamine as causes of the offense, but he fails to acknowledge significant causative factors such as the decline of his marriage, custody issues, and his anger management problem. Further, the psychologist noted that Petitioner displayed some of the predictive factors of recidivism. Petitioner exhibited a sense of entitlement and hostile feelings over his continued incarceration. Therefore, the state court finding on this issue was also not unreasonable.

The Board also considered the positive factors favoring parole release. The Board commended Petitioner for remaining completely violence-free in the institution and for not having suffered a single CDC-115 serious rules violation. The Board also lauded Petitioner for his vocational gains and his excellent work reports. The Board also noted Petitioner had viable parole plans, a job prospect, a place to live, and support from family. The Board encouraged Petitioner to continue with his gains, but also seek further self-help programming to delve into and understand the causative factors for the offense, in particular his anger issue. After considering the positive and negative factors, the Board concluded Petitioner remained an unreasonable risk of danger to the public in light of his crime, his past unstable social history and criminal behavior, his limited self-help programming, and his psychological issues. The state court finding that some evidence supported this determination was not unreasonable.

Petitioner also argues that the Board's continuing reliance on the unchanging circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's unstable social history, prior criminal behavior, limited self-help programming and psychological issues to be significant in concluding he would pose an unreasonable danger to public safety should he be presently released. Moreover, the concerns raised in Biggs are not present in this case as Petitioner was sentenced to a minimum indeterminate term of life

imprisonment.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 23, 2009                  /s/ Gary S. Austin
                                    UNITED STATES MAGISTRATE JUDGE